IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

KAY DEARING ELLISON,

                Plaintiff,

v.                                                     CIVIL ACTION NO. 5:06-cv-00575

COMMISSIONER OF INTERNAL
REVENUE SERVICE,

                Defendant.

**MEMORANDUM OPINION**

Pending before the Court are Plaintiff's Motion for Summary Judgment [Docket 16] and the IRS's Cross-Motion for Summary Judgment [Docket 18].[1]  This matter is before the Court on Plaintiff's appeal for re-determination of the validity of taxes assessed for the tax periods ending September 30, 1993 and December 31, 1993, respectively.  Plaintiff originally challenged the validity of the assessments in a collection due process (CDP) hearing before the IRS Appeals Office,

---

[1] Plaintiff filed a Motion to Strike the IRS's Cross-Motion [Docket 21].  In this motion, Plaintiff argues that the IRS's cross-motion for summary judgment was not filed in accordance with the Court's First Amended Scheduling Order [Docket 14], which set the deadline for dispositive motions as October 1, 2007.  Indeed, the IRS did not file its cross-motion until October 17, 2007, a date which falls within the deadline for responses to dispositive motions.  Although the IRS disregarded the Court's scheduling guidelines, it is certainly within the Court's discretion to consider an untimely motion.  In this case, the Court **FINDS** that the non-moving party has failed to demonstrate any prejudice caused by the IRS's untimely filing.  In fact, Plaintiff participated in a hearing, where the Court heard oral argument on the cross-motions.  Therefore, Plaintiff's Motion to Strike [Docket 21] is **DENIED**.

which upheld the assessments. Pursuant to 26 U.S.C. §§ 6320(c) and 6330(d), Plaintiff appealed the IRS's determination to the Tax Court. Finding that it lacked jurisdiction,[2] the Tax Court dismissed Plaintiff's appeal and instructed her to re-file her appeal in the appropriate United States District Court. On July 21, 2006, Plaintiff timely filed her appeal in this Court. The parties agreed to resolve the case on cross-motions for summary judgment, (*See* Docket 22 ¶ 3), and the Court heard oral argument on the cross-motions. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [Docket 16] and **DENIES** the IRS's Cross-Motion for Summary Judgment [Docket 18].

*I. BACKGROUND*

The material facts are not in dispute. At issue are two IRS assessments of unpaid trust fund taxes. The assessments arise out of Plaintiff's liability as an officer of Great American Holding

---

[2] When Plaintiff filed her petition in 2006, the Tax Court retained limited jurisdiction.

> (1) Judicial review of determination. -- The person may, within 30 days of a determination under this section, appeal such determination --
>
> (A) to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter); or
>
> (B) if the Tax Court does not have jurisdiction of the underlying tax liability, to a district court of the United States.
>
> If a court determines that the appeal was to an incorrect court, a person shall have 30 days after the court determination to file such appeal with the correct court.

26 U.S.C. § 6330(d) (2006). Prior to the 2006 amendments to this section, the Tax Court did not have jurisdiction to review trust fund recovery penalties, such as the one at issue here, imposed under 26 U.S.C. § 6672. *See Moore v. Comm'r*, 114 T.C. 171, 176-77 (2000) (reasoning that if the Tax Court does not have jurisdiction over federal trust fund taxes, it does not have jurisdiction to review an administrative decision pertaining to the same).

Company, Inc. (GAHC), for taxes not paid by the company during the tax periods ending September 30, 1993, and December 30, 1993.[3]  On January 28, 1994, GAHC ceased its business activities and filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of West Virginia.  Plaintiff then filed a personal bankruptcy petition with the same court on April 15, 1994.

In May of 1994, IRS agents solicited the execution of a Form 2751 "Proposed Assessment of Trust Fund Recovery" from Plaintiff, essentially obtaining her consent to the assessment of the unpaid trust fund taxes for the periods ending September 30 and December 31, 1993.[4]  After obtaining Plaintiff's consent, the IRS made an assessment against her for the unpaid trust fund taxes on July 11, 1994.  Then, on April 25, 1995, the IRS filed a Notice of Lien against Plaintiff.  On June 9, 1997, however, the IRS issued a Certificate of Release, noting that the April 25, 1995 Notice of Lien had been "erroneously filed."  It was not until May 29, 1999 that the IRS filed an official Release of Lien absolving Plaintiff of that 1995 lien.  Finally, on May 26, 2005, the IRS issued a Notice of Intent to Levy regarding the trust fund taxes assessed on July 11, 1994.[5]

---

[3] By virtue of her position as an officer, Plaintiff is a "responsible person" under 26 U.S.C. § 6672. *See Abrams v. United States*, 333 F. Supp. 1134, 1146 (S.D. W. Va. 1971) (Field, J.) ("Persons subject to liability under 26 U.S.C. Section 6672 are those individuals who have both the power and the responsibility within the corporate structure for assuring that taxes are withheld and properly paid over to the Government.")

[4] The Form 2751 reads: "I consent to the assessment and collection of the total penalty shown . . . and [] waive the privilege of filing a claim for abatement after assessment."  (Docket 16-2 at 1.)

[5] At the time the Notice of Intent to Levy was issued, both GAHC and Plaintiff had been discharged from their bankruptcy proceedings: Plaintiff on May 23, 1997, and GAHC five years later, on August 16, 2002.

After receiving the Notice of Intent to Levy, Plaintiff requested a CDP hearing to challenge the propriety of the Notice. After the hearing, on February 2, 2006, the IRS Appeals Office issued a notice of determination finding the Notice of Intent to Levy to be appropriate.[6] Plaintiff initially sought review of that determination in the United States Tax Court pursuant to 26 U.S.C. §§ 6320 and 6330. That action, however, was dismissed for lack of jurisdiction and Plaintiff subsequently re-filed her appeal in this Court.

In her summary judgment motion, Plaintiff advances the argument that the IRS's solicitation of the Form 2751 waiver and subsequent assessment of taxes on July 11, 1994, both of which occurred while Plaintiff's bankruptcy proceedings were still pending, violated the automatic stay provisions of the Bankruptcy Code and are therefore void. Based on the alleged invalidity of these acts, Plaintiff requests that the Court absolve her from her liability for the unpaid taxes.

The IRS's cross-motion does not address the validity of its acts; rather, it argues that the Court lacks jurisdiction to review the assessment because Plaintiff did not contest that validity at the CDP hearing. According to the IRS, Plaintiff addressed only two issues at the CDP hearing: her alleged failure to receive notice of the assessment and the propriety of an offer-in-compromise as an alternative remedy. Moreover, the IRS asserts that Plaintiff was precluded from contesting the validity of her underlying liability at the CDP hearing by virtue of her Form 2751 waiver.

In Plaintiff's response to the cross-motion, she contends that she had properly raised the effect of the automatic stay upon the tax assessment during the CDP hearing. Further, Plaintiff

---

[6] There is some dispute in the briefing as to whether Plaintiff disputed the validity of the July 11, 1994, assessment at the CDP hearing, however, counsel for the IRS conceded at the motions hearing that Plaintiff did indeed dispute the validity of the assessment at the CDP hearing.

asserts that the solicitation of the Form 2751 waiver was itself void as a violation of the automatic stay.

The Court heard oral argument on the cross-motions on November 12, 2007. During that hearing, the IRS conceded that Plaintiff had raised the issue of the validity of the tax assessment during the CDP hearing, but maintained that doing so was improper because her execution of the Form 2751 waived any right she had to do so. Moreover, the IRS argued that even if its 1994 assessment would have violated the automatic stay, the execution of the Form 2751 waiver essentially cures the violation. The issues have been fully briefed and argued before the Court and the matter is now ripe for summary judgment.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Brunting*, 327 F.3d 355, 363 (4th Cir. 2003) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Each moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Moreover, each nonmoving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's summary judgment motion raises two issues: (1) whether the IRS's assessment and collection attempts violated the automatic stay; and (2) whether acts in violation of the automatic stay are void as a matter of law.

#### A. *The Effect of the Automatic Stay*

The Bankruptcy Code protects individuals or businesses who file petitions for bankruptcy from debt collection activities during the pendency of their proceedings. The Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to create, perfect, or enforce any lien against property of the [petitioner's] estate[, and] any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a).[7] A stay imposed by subsection (a) remains effective until the bankruptcy case is closed, dismissed, or discharged. § 362(c). However, a party-in-interest can request that a court grant it relief from the stay under certain limited conditions. *See* §§ 362(d), (f). At the same time, if an entity willfully violates the stay, an injured party is entitled to recover actual damages and, if appropriate, punitive damages. § 362(k)(1).

The operation of the stay is automatic and "effective immediately upon filing of the petition." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994). Moreover, "[t]he IRS is subject to the automatic stay when engaged in tax collection activities." *See In re Loughnane*, 28 B.R. 940, 941 (Bankr. D. Colo. 1983). Therefore, if the IRS attempts to assess or collect taxes from

---

[7] While the IRS is able to make a tax assessment under the current version of the code, it was precluded from doing so prior to October 22, 1994. *See* Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §§ 116 and 702, 108 Stat. 4106, 4119 and 4150 (1994). Further, the case at bar involves not only a Notice of Assessment, but also a Notice of Intent to Levy, which has never been excepted from the protection of the stay.

an individual or corporate bankruptcy petitioner without first requesting relief from the stay, its acts violate § 362(a).

In this case, both Plaintiff and GAHC had filed bankruptcy petitions by March of 1994. Consequently, the automatic stay was in effect on May 18, 1994, when the IRS asked Plaintiff to sign the Form 2751. By soliciting Plaintiff's signature, the IRS violated § 362(a)(6), which prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." The IRS's subsequent assessment on July 11, 1994, also qualifies as an attempt to assess a claim against Plaintiff while she was under the protection of the stay. Thus, both of these attempts to assess a claim against Plaintiff while she was under the protection of the automatic stay violate the § 362(a) ban.

     *B.*     *Validity of Acts Taken in Violation of the Automatic Stay*

The Court must now decide what effect a violation of the automatic stay has upon the underlying tax action. Plaintiff argues that the majority of courts adopt the position that violations of the automatic stay are void and without effect. Characterizing an act as "void" or "voidable" has the practical effect of determining which party bears the burden of going forward. *See Soares v. Brockton Credit Union* (*In re Soares*), 107 F.3d 969, 976 (1st Cir. 1997). Declaring an act that violates the automatic stay "void" places the burden of validating the underlying action on the offender. *Id.* Conversely, declaring an act that violates the automatic stay "voidable" places the burden of invalidating the underlying action on the debtor. *Id.* The Court notes that the statute itself provides no clear guidance on this point as to an act that violates the stay. While neither the Supreme Court nor the Fourth Circuit has ruled on the issue, other circuits are split as to whether a violation of the automatic stay is void or merely voidable.

The majority of circuits hold that a violation of the automatic stay is generally void as a matter of law. *See, e.g.*, *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (1st Cir. 2003) ("acts undertaken in violation of the automatic stay are not only void, but may expose the violator to monetary sanctions as well") (citing *In re Soares*, 107 F.3d at 976); *Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001) ("Actions taken in violation of an automatic stay ordinarily are void."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994) ("[A]ny proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect.") (citations omitted); *Schwartz v. United States,* 954 F.2d 569 (9th Cir.1992) ("Actions taken in violation of an automatic stay ordinarily are void."); *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371 (10th Cir.1990) (same); *In re Ward,* 837 F.2d 124 (3d Cir.1988) (same); *Borg-Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982) (same).

Courts holding that violations of the automatic stay are void rely both on the legislative history of § 362 and Supreme Court cases addressing the previous version of the Bankruptcy Code. The legislative history reveals that the drafters intended the stay to extend broad protection to debtors during the pendency of their proceedings:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from its creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

Senate Judiciary Comm., Bankruptcy Reform Act of 1978, S. Rep. No. 95-989, at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41. The Supreme Court has provided similar guidance with regard to vigorously upholding the integrity of bankruptcy protections. *See Kalb v. Feurstein*,

308 U.S. 433, 438-39 (1940) ("Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to [the principle that judgments should not be vulnerable to collateral attack] and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally."). Placing the burden of invalidating an action that violates the automatic stay on a debtor would undermine these fundamental purposes.

Conversely, a minority of circuits hold that a violation of the automatic stay is voidable. *See, e.g.*, *Bronson v. United States,* 46 F.3d 1573, 1578 (Fed. Cir. 1995) ("While the automatic stay is 'one of the fundamental debtor protections' of bankruptcy law, [courts should] determine if the action frustrates the statutory purpose or underlying policies. If the assessment does not frustrate the purpose of the automatic stay . . . then it should be merely voidable."); *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 910 (6th Cir. 1993) ("We emphasize that we are not encouraging creditors to violate the stay, and we offer no new exceptions to the operation of the stay by the mere holding that actions in violation of the stay are voidable."); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989) ("We are persuaded that the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void."). These circuits reason that holding all violations of the automatic stay void is an inaccurate interpretation of 11 U.S.C. § 362 because the statute specifically grants courts discretion to excuse creditors from the stay under Section 362(d) and because certain actions taken in violation of the automatic stay, such as transfers of property by creditors who are unaware of the stay, are expressly deemed valid by the Code. *Sikes*, 881 F.2d at 179.

Based upon the foregoing, this Court examines the validity of an act that violates the automatic stay as a matter of first impression.[8]  Although the Fourth Circuit has not yet addressed the validity of acts in violation of the automatic stay, it does recognize that the stay is intended to provide debtors significant protection.  *See Winters v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996) ("The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding.") (citation omitted).[9]  Additionally, courts within this circuit have adopted the majority position.  *See In re Clarkson*, 168 B.R. 93, 94 (Bankr. D.S.C. 1994) ("Actions by creditors to collect a debt from the debtor, which are taken after the filing of a bankruptcy petition, are void *ab initio* and of no legal effect.") (citation omitted); *In re Lampkin*, 116 B.R. 450, 453 (Bankr. D. Md.1990) ("This court will adhere to the general rule that violations of the stay are void."); *In re Burns,* 112 B.R. 763, 765 (Bankr. E.D. Va. 1990) ("Bankruptcy Courts have generally held that actions taken in violation of the automatic stay are void, and this Court finds no reason to disregard the general rule here."); *but see Blue Ridge Bank v. Boswell (In re Boswell)*, 206 B.R. 421, 423 (Bankr. W.D.

---

[8] The Court is aware that at least one case in the Southern District of West Virginia has addressed the validity of an act taken in violation of the automatic stay.  *See In re Smith*, 155 B.R. 145 (Bankr. S.D. W. Va. 1993) (Friend, J.), *disagreed with on other grounds by In re Bardell*, 374 B.R. 588 (N.D. W. Va. 2007).  In this opinion, Judge Friend relied on the Fourth Circuit's reasoning in *In re Knightsbridge Dev. Co.*, 884 F.2d 145, 148-49 (4th Cir. 1989), to conclude that "[a]cts taken in violation of § 362 are void."  *In re Smith*, 155 B.R. at 148.  Although this Court concurs with Judge Friend's holding regarding the validity of acts in violation of the automatic stay, it does not read *In re Knightsbridge* as expressly reaching this conclusion.

[9] The Fourth Circuit declined to address the validity of acts that violate the automatic stay because it found that the plaintiff lacked standing to raise the issue.  *Id*. at 136.

10

Va. 1997) (holding that annulment of the automatic stay can be retroactively applied to validate proceedings that otherwise would be void).

In the view of this Court, the clear weight of authority favors treating violations of the automatic stay as void as a matter of law.[10] Furthermore, adopting the opposite position diminishes the benefits of the automatic stay by placing an additional burden on a debtor in bankruptcy. No such burden arises when a court finds that an act is void. As a policy matter, this Court believes that a debtor's time and money are better spent reorganizing their finances, rather than prosecuting litigation on the validity of acts violating the automatic stay. Further, the Court does not wish to encourage creditors to violate automatic stays by rewarding such behavior. Accordingly, the Court follows the majority of circuits in holding that violations of the automatic stay are void as a matter of law. In doing so, the Court holds that the IRS's May 18, 1994 solicitation of the signed Form 2751 Notice of Proposed Assessment and July 11, 1994 assessment are void and without effect. The Court, however, declines to impose monetary sanctions for these violations.[11]

---

[10] One case addressing a similar factual scenario contradicts the majority position. In *Riley v. United States*, 192 B.R. 727, 729 (Bankr. E.D. Mo. 1995), the IRS sent an individual bankruptcy petitioner a notice of proposed assessment for a § 6672 penalty. *Id.* The plaintiff advised the IRS that this proposed assessment violated the automatic stay. *Id.* The IRS disagreed with the plaintiff's position. *Id.* After paying the taxes, the plaintiff brought a refund action in district court. *Id.* The Eastern District of Missouri held that "the Notice of Proposed Assessment at issue violated the automatic stay such that it is *void ab initio*." *Id.* at 730. In turn, the Eighth Circuit reviewed this decision and found that the Notice of Proposed Assessment did violate the automatic stay, but held that a debtor was not entitled to have the underlying tax liability voided in the context of a refund action. *Riley v. United States*, 118 F.3d 1220, 1222 (8th Cir. 1997). *Riley* is distinguishable from the instant case, however, because it does not concern a refund action, but judicial review of an administrative decision under 26 U.S.C. § 6330.

[11] The parties have not requested this remedy nor have they pled sufficient facts to allow the Court to determine whether the violations of the automatic stay were willful. "To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf (In re Strumpf),* 37 F.3d 155, 159 (4th

*IV.  THE IRS'S CROSS-MOTION FOR SUMMARY JUDGMENT*

The IRS argues that this Court lacks jurisdiction to review Plaintiff's claim because she did not properly raise the issue of the validity of her underlying tax liability (i.e. the July 11, 1994 assessment) during the administrative review process.  As noted above, however, counsel for the IRS conceded at oral argument that Plaintiff did indeed raise the issue at her CDP hearing.  Regardless, the IRS contends that Plaintiff's execution of the Form 2751 consent to assessment on May 18, 1994 barred her from later challenging that assessment via administrative review.

*A.     Jurisdiction under 26 U.S.C. §§ 6320 and 6330*

In this case, Plaintiff requested administrative review under 26 U.S.C. §§ 6320 and 6330, which grant a taxpayer the right to a fair hearing conducted by the IRS Office of Appeals.  "The appeals officer shall at the hearing obtain verification from the Secretary [of the IRS] that the requirements of any applicable law or administrative procedure have been met."  § 6330(c)(1).  The issues that a taxpayer is entitled to raise at such a hearing include: "(i) appropriate spousal defenses; (ii) challenges to the appropriateness of collection actions; and (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise."  § 6330(c)(2)(A).  "The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  § 6330(c)(2)(B).  "An opportunity to dispute the

---

Cir.1994), *rev'd on other grounds*, 516 U.S. 16 (1995).  The Court's only reference to Defendant's knowledge of the stay is its act of releasing the lien against Plaintiff with the explanation that it was "erroneously filed."  Further, the Plaintiff has failed to show that she suffered any actual damages.  Therefore, the Court declines to impose monetary sanctions pursuant to 11 U.S.C. § 362(k)(1).

underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability." 26 C.F.R. § 301.6330-1. Ultimately, the determination of the appeals officer must include consideration of applicable laws and administrative procedures, the taxpayer's objections, and a balancing test -- the need to collect taxes efficiently against the intrusiveness of the tax collection activity on the taxpayer. 26 U.S.C. § 6330(c)(3).

A district court has authority under 26 U.S.C. § 6330(d) to review IRS decisions regarding issues raised in administrative proceedings. Some courts, however, interpret § 6330 as conferring jurisdiction to district courts over only those "issues properly raised and considered during the collection due process hearing." *See Maton v. Comm'r*, No. 02 C 6609, 2003 WL 1860514, at *3 (N.D. Ill. Apr. 10, 2003) (citations omitted); *Dowdy v. United States*, No. 4:04-CV-232, 2005 WL 1719899, at *7 (E.D. Tex. July 22, 2005). Other cases suggest that an improperly raised argument regarding underlying tax liability does not preclude judicial review of an IRS Appeals Office determination, rather, it affects the applicable standard of review. *See, e.g.*, *Talen v. United States*, 355 F. Supp. 2d 22, 28-29 (D.D.C. 2004).

28 U.S.C. § 6330 does not explicitly define the type of review that district courts may conduct, however, courts have examined the legislative history of the statute and applied different standards based on whether the issue of validity was raised at the CDP hearing. *See Dowdy*, 2005 WL 17198899, at *5; *Muller v. Rossotti*, No. 3:02-0867, 2004 WL 1005385, at *7 (M.D. Tenn. Mar. 24, 2004). Courts review § 6330 petitions *de novo* if the validity of the underlying tax liability was properly raised during the administrative process. *Dowdy,* 2005 WL 17198899 at *5. When the validity of the underlying tax liability was not properly raised during the CDP hearing, courts review

13

the administrative decision under an abuse of discretion standard. *Id.* Thus, the Court turns to the question of whether Plaintiff properly raised the issue of her underlying tax liability at the CDP hearing.

### B. *Effect of the Form 2751 Waiver*

The IRS disputes Plaintiff's ability to seek review of its determination, arguing that she failed to meet the requirements set forth in § 6330(c)(2)(B) when challenging her underlying tax liability. Specifically, the IRS argues that Plaintiff was precluded from challenging her underlying tax liability when she signed the Form 2751 waiver. The IRS cites cases that suggest "[s]tatutory preclusion is triggered by the opportunity to contest the underlying liability, even if the opportunity is not pursued." *Bell v. Comm'r*, 126 T.C. 356, 358 (2006) (citing *Goza v. Comm'r,* 114 T.C. 176, 182-83 (2000)); *Currie v. Comm'r*, No. CIVA1:03CV3406WBH, 2005 WL 1155146, at *5 (N.D. Ga. March 31, 2005). The IRS also points to cases where courts have held that a plaintiff's consent to a proposed assessment precluded judicial review of her underlying tax liability. *See Dowdy*, 2005 WL 1719899, at *5; *Muller*, 2004 WL 1005385, at *6; *In re Sloan*, 298 B.R. 377, 380-81 (Bankr. W.D. Mo. 2003); *Johnson v. United States*, No. Civ.A.1:03CV0475-GET, 2003 WL 22989550, at *3 (N.D. Ga. Oct. 8, 2003); *Maton*, 2003 WL 1860514, at *2. All of these cases, however, are factually distinguishable from the case at bar. Specifically, none of them address the effect of the Bankruptcy Code's automatic stay provision on the IRS's solicitation of a Form 2751 waiver. Therefore, the Court finds this authority unpersuasive.

The IRS next argues that the execution of a Form 2751 waives a bankruptcy petitioner's automatic stay protection. Thus, the petitioner can no longer properly claim that the subsequent assessment violates the stay because she has waived the stay's protection. The Court rejects this

circular argument. The language of 11 U.S.C. § 362 does not create any such exception for a waiver and its legislative history does not support that result. In this case, the Court has already held that the IRS's act of soliciting the Form 2751 violated the automatic stay and was consequently void as a matter of law. As such, Plaintiff in effect did not consent to the assessment and thus was not barred from raising the issue of her underlying tax liability at her CDP hearing. Because counsel for the IRS conceded that Plaintiff in fact raised that issue at the CDP hearing, this Court has jurisdiction to review the administrative decision and may do so *de novo*.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [Docket 16] and **DENIES** Defendant's Cross-Motion for Summary Judgment [Docket 18]. Likewise, Plaintiff's Motion to Strike [Docket 21] is **DENIED**. The Court will enter a Judgment Order this day implementing the rulings contained herein. The Clerk is **DIRECTED** to publish this Memorandum Opinion on the Court's website at http://www.wvsd.uscourts.gov.

ENTER: April 9, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE